UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| RACATAC PRODUCTS, INC., <br><br>          Plaintiff <br> Versus <br><br> DURIO, MCGOFFIN, STAGG & ACKERMANN, A PROFESSIONAL CORPORATION, <br><br>          Defendant | Case No.: _____ <br><br> Judge: _____ <br><br> Magistrate Judge: _____ |

## **COMPLAINT**

Pursuant to the Federal Rules of Civil Procedure, Plaintiff Racatac Products, Inc. respectfully submits this "Complaint" and further represents as follows:

## PARTIES

1.

Plaintiff Racatac Products, Inc. ("Racatac") is a Louisiana corporation whose corporate office and principal place of business are situated in Lafayette Parish, Louisiana at 3229 West Gloria Switch Road, Church Point, LA 70525. Racatac is owned and managed by Mr. Craig A. Comeaux ("Comeaux").

2.

Defendant Durio, McGoffin, Stagg & Ackermann, A Professional Corporation ("DMSA"), is a Louisiana corporation whose corporate office and principal place of business are situated in Lafayette Parish, Louisiana at 220 Heymann Blvd., Lafayette, LA 70503.

## JURISDICTION AND VENUE

3.

Subject matter jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1338, which provides that federal "district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents."

4.

Although a legal malpractice claim, this is ultimately a case "in which the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law." *See Warrior Sports, Inc. v. Dickinson Wright, P.L.L.C.*, 631 F.3d 1367, 1370 (Fed. Cir. 2011) (affirming exclusive federal jurisdiction of a legal malpractice claim that depended upon proof of patent infringement).

5.

Even if this case does not present a substantial question of federal patent law, Racatac's claim nonetheless presents questions of federal patent law, the existence and extent of patent infringement, and the standard of conduct made applicable to patent attorneys by federal law. Accordingly, federal subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1331. *Carter v. ALK Holdings, Inc.*, 605 F.3d 1319, 1324 (Fed. Cir. 2010) ("[W]e [have] held that the question of patent infringement was a necessary element of a legal malpractice claim stemming from prior litigation.").

6.

Venue is proper in the Lafayette Division of the Western District of Louisiana, as that is the geographical division and judicial district in which the sole defendant resides. *See* 28 U.S.C. § 1391(b)(1).

## FACTUAL BACKGROUND

7.

In the 1990's, Comeaux was a well-established brick-layer working throughout the Lafayette area.

8.

In approximately 1998, Comeaux invented a kneeling apparatus designed specifically to enable brick-layers and other craftsmen to comfortably shift between sitting and kneeling positions while working.

9.

The kneeling apparatus is essentially a light, wheeled frame, to which is mounted a padded seat on the rear and two padded knee supports on the front. At a basic level, the device permits a user to alternately rest or work from his buttocks and knees.

10.

In approximately February 1999, Comeaux retained attorney William W. Stagg to evaluate the viability of and pursue a patent for Comeaux's kneeling apparatus. At the time and at present, Mr. William W. Stagg is a principal and officer of DMSA (f/k/a Durio, McGoffin & Stagg, Professional Corporation).

11.

With the assistance of William W. Stagg and DMSA, Comeaux proceeded to draft appropriate patent paperwork and submit a patent application for his kneeling apparatus to the U.S. Patent and Trademark Office ("Patent Office").

12.

On May 7, 1999, William W. Stagg submitted a formal patent application (No. 09/307,291) for the kneeling apparatus on behalf of Comeaux.

13.

On the same date, Comeaux formed the Racatac entity to serve as the principal patent-holder and business entity for purposes of manufacturing and selling the kneeling apparatus. Contemporaneously therewith, Comeaux assigned his interest in the pending patent to Racatac, which assignment was also recorded with the Patent Office on May 7, 1999.

14.

After various exchanges with the Patent Office and resulting amendments to Racatac's patent application, the Patent Office finally accepted Racatac's patent application and assigned the kneeling apparatus Patent No. "6,302,413 B1" ("the Patent").

15.

Technically a "utility patent," the Patent provided Racatac with the exclusive right to market and sell the associated kneeling apparatus in the United States for twenty years from the date of filing, or until May 7, 2019.

16.

In order to maintain the Patent for its entire twenty-year life, Racatac was required to pay periodic maintenance fees to the Patent Office at 3.5 years, 7.5 years, and 11.5 years from the date of the Patent.

17.

As William W. Stagg advised Racatac in a letter dated October 23, 2001, "The maintenance fee must be received in the Patent Office on or before the date the fee is due or

within a grace period of six (6) months thereafter. **YOUR PATENT WILL EXPIRE IF YOU FAIL TO PAY THE MAINTENANCE FEE BEFORE THE END OF THE GRACE PERIOD**."

18.

On February 18, 2004, William W. Stagg contacted Racatac to advise it that the Patent's 3.5-year maintenance fee was due. William W. Stagg transmitted the maintenance fee payment to the Patent office on April 6, 2004.

19.

On February 26, 2009, William W. Stagg contacted Racatac to advise it that the Patent's 7.5-year maintenance fee was due. His letter further stated, "Our fee for monitoring the maintenance fee status and preparing and filing the maintenance fee is $250.00." Racatac paid the $250.00 to DMSA, maintaining the Patent through October 16, 2013.

20.

William W. Stagg and DMSA failed to advise Racatac when the Patent's 11.5-year maintenance fee became due.

21.

On information and belief, William W. Stagg and DMSA received multiple notices from the Patent Office advising them that Racatac's maintenance fee was due, and later, overdue.

22.

On information and belief, William W. Stagg and DMSA received an electronic maintenance fee reminder concerning the Patent from the Patent Office on or about May 24, 2013.

23.

On October 16, 2013, the Patent lapsed when the 11.5-year maintenance fee was not timely paid.

24.

Since October 16, 2013, at least two devices potentially infringing the Patent have begun to be marketed in the United States.

25.

Because Racatac's Patent has lapsed, it has no recourse against the individuals or entities that are now marketing and selling devices similar to the kneeling apparatus patented by Racatac.

26.

Had William W. Stagg and DMSA not permitted the Patent to lapse, Racatac would be entitled to (a) enjoin the manufacture or sale of otherwise-infringing devices in the United States, or (b) claim an appropriate licensing fee from any individual or entity manufacturing or selling otherwise-infringing devices.

27.

Because William W. Stagg and DMSA allowed the Patent to lapse and otherwise-infringing devices to enter the market, Racatac has lost both actual and potential sales and profits. Racatac will continue to lose sales and profits to otherwise-infringing devices over what should have been the remaining life of the Patent, or until May 7, 2019.

28.

Racatac did not know or have reason to know about DMSA's failure or the lapse of the Patent until March 2016.

## CAUSES OF ACTION

29.

DMSA is liable to Racatac for professional negligence and legal malpractice.

30.

DMSA, through duly-licensed attorney William W. Stagg, was the designated recipient of communications from the Patent Office and had a duty to monitor the maintenance fees due on the Patent.

31.

As Racatac's attorneys, DMSA also had a duty to reasonably provide Racatac with material information known to DMSA, including: that the Patent's 11.5-year maintenance fee had become due in April 2013; that the Patent Office had contacted DMSA to request payment of the maintenance fee; and that the required maintenance fee had not been paid.

32.

DMSA failed to notify Racatac that its maintenance fees were due, that DMSA had received demands for payment from the Patent Office, and that Racatac's Patent was in danger of lapsing. Racatac has suffered substantial damages as a result, including: the loss of eight years' worth of product exclusivity; lost sales and profits due to the loss of market share to otherwise-infringing devices; the loss of viable patent infringement claims against entities that would otherwise be liable to Racatac for patent infringement; the loss of potential licensing fees that would be obtainable from the manufacturers of otherwise-infringing devices.

33.

Through the acts and omissions identified above, DMSA otherwise failed to comply with the standard of care applicable to federal patent lawyers pursuant to the Patent Office Rules of Professional Conduct. *See, e.g.*, 37 C.F.R. §§ 11.103; 11.104.

34.

DMSA is liable to Racatac for breach of contract.

35.

DMSA, through duly-licensed attorney William W. Stagg, undertook an obligation to monitor and provide Racatac with notice pertaining to the 11.5-year maintenance fee due in connection with the Patent.

36.

DMSA failed to reasonably follow and notify Racatac with respect to the 11.5-year maintenance fees due in connection with the Patent. Racatac has suffered substantial damages as a result, including: the loss of eight years' worth of product exclusivity; lost sales and profits due to the loss of market share to otherwise-infringing devices; the loss of viable patent infringement claims against entities that would otherwise be liable to Racatac for patent infringement; the loss of potential licensing fees that would be obtainable from the manufacturers of otherwise-infringing devices.

37.

Racatac specifically alleges all other causes of action and bases for relief that are supported by the allegations in this Complaint and/or substantially similar to the causes of action expressly pled.

## PRAYER

38.

After due delays and proceedings pursuant to the Federal Rules of Civil Procedure, Racatac respectfully requests that this Court enter judgment in its favor as follows:

1. Finding DMSA liable to Racatac for professional negligence and legal malpractice;

2. Finding DMSA liable to Racatac for breach of contract;

3. Awarding Racatac all reasonable damages suffered as a result of DMSA's culpable acts;

4. Awarding Racatac its reasonable costs and expenses; and

5. Awarding Racatac all other just, legal, and equitable relief to which it may be entitled.

Respectfully submitted,

TAYLOR, PORTER, BROOKS & PHILLIPS L.L.P.

By: /s/ Ryan French
Robert W. Barton, Bar # 22936
Bob.barton@taylorporter.com
Ryan K. French, Bar # 34555
Ryan.french@taylorporter.com
Juan Miranda, Bar # 35923
Juan.miranda@taylorporter.com
450 Laurel Street, 8th Floor (70801)
P. O. Box 2471
Baton Rouge, LA 70821
Tel:   225.381.0262
Fax:  225.215.8741

***Attorneys for Racatac Products, Inc.***

CERTIFICATE OF SERVICE

      I hereby certify that on April 15, 2016, a copy of the foregoing was filed electronically with the Clerk of the Court using the CM/ECF system. Notice of filing will be sent by operation of the court's electronic filing system to all counsel of record.

                                          /s/ *Ryan K. French*
                                                Ryan K. French